UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ABERDEEN CITY COUNCIL AS
ADMINISTRATING AUTHORITY FOR
THE NORTH EAST SCOTLAND PENSION
FUND,

                    Plaintiff,

    vs.

BLOOMBERG L.P.,

                  Defendant.

————————————————————

(*In re Under Armour Securities Litigation,
Pending in the United States District Court,
District of Maryland*, Civil No. RDB-17-388)

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Miscellaneous Civil Action No. 1:23-mc-
00070-LAK-GWG

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL BLOOMBERG L.P.
TO PRODUCE DOCUMENTS
RESPONSIVE TO PLAINTIFF'S
SUBPOENA

AMENDED REDACTIONS

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................1

II.    THE JOURNALISTS' PRIVILEGE DOES NOT APPLY .................................................3

      A.     This Would Not Be the First Time a Court in This District Has Applied
              *Chevron* in Denying Application of the Journalists' Privilege .............................4

      B.     This Is About Ruhle, Not Bloomberg; Plaintiff Need Not Show that
              *Chevron* Applies to Bloomberg's Unrelated Activities ...........................................6

      C.     *Fowler* and *Giuffre* Concern the New York Shield Law, Not the Federal
              Privilege at Issue Here, and Support Plaintiff Anyway ...........................................8

      D.     Bloomberg Fails to Carry Its Burden of Producing Evidence to Establish
              Entitlement to the Privilege ....................................................................................11

      E.     Bloomberg's Other Arguments Fail to Establish Ruhle's Independence .............14

III.   EVEN IF THE PRIVILEGE APPLIES, PLAINTIFF'S NEED FOR
       BLOOMBERG'S EVIDENCE OVERCOMES BLOOMBERG'S ASSERTION
       OF PRIVILEGE ..................................................................................................17

IV.    BLOOMBERG HAS ABANDONED ITS UNDUE BURDEN OBJECTION ................21

V.     CONCLUSION ..................................................................................................22

4869-8933-0529.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Azar*,
   396 F. Supp. 3d 242 (D. Conn. 2019) ........................................................................5

*Baker v. Goldman Sachs & Co.*,
   669 F.3d 105 (2d Cir. 2012)..............................................................................6, 16

*Chautauqua Com. Park, LLC v. Main St. Am. Assurance Co.*,
   2022 WL 15200905 (W.D.N.Y. Oct. 27, 2022) ..................................................21

*Chevron Corp. v. Berlinger*,
   629 F.3d 297 (2d Cir. 2011)......................................................................... *passim*

*Fowler v. Vary*,
   2022 WL 3211638 (S.D.N.Y. Aug. 9, 2022) (Kaplan, J.) ............................. *passim*

*Gonzales v. Nat'l Broad. Co., Inc.*,
   194 F.3d 29 (2d Cir. 1999)........................................................................... *passim*

*Guiffre v. Maxwell*,
   221 F. Supp. 3d 472 (S.D.N.Y. 2016).......................................................... *passim*

*Guzman v. News Corp.*,
   877 F. Supp. 2d 74 (S.D.N.Y. 2012),
   *aff'd*, 2012 WL 13042629 (S.D.N.Y. Nov. 5, 2012) ....................................1, 7, 22

*Herbert v. Lando*,
   441 U.S. 153 (1979)..........................................................................................22

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
   2014 WL 12601010 (W.D. La. Jan. 30, 2014) ..................................................13

*In re Application of Chevron Corp.*,
   709 F. Supp. 2d 283 (S.D.N.Y. 2010) (Kaplan, J.),
   *aff'd sub nom. Chevron Corp. v. Berlinger*,
   629 F.3d 297 (2d Cir. 2011)...................................................12, 17, 19, 21

*In re Application of Chevron Corp.*,
   736 F. Supp. 2d 773 (S.D.N.Y. 2010) (Kaplan, J.)............................................11

*In re Grand Jury Subpoena Dated Jan. 4, 1984*,
   750 F.2d 223 (2d Cir. 1984)..............................................................................12

4869-8933-0529.v1

**Page**

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
  991 F. Supp. 2d 464 (S.D.N.Y. 2013)..............................................................17, 19

*In re Search Warrant Executed on Nov. 5, 2021*,
  2023 WL 3005726 (S.D.N.Y. Mar. 21, 2023) ............................................. *passim*

*Mandal v. City of N.Y.*,
  2004 WL 2375817 (S.D.N.Y. Oct. 21, 2004) ................................................18, 20

*New Eng. Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*,
  2014 WL 1567297 (S.D.N.Y. Apr. 17, 2014)....................................................6, 21

*Prignoli v. City of N.Y.*,
  1996 WL 340001 (S.D.N.Y. June 19, 1996) ...........................................................7

*Schiller v. City of N.Y.*,
  245 F.R.D. 112 (S.D.N.Y. 2007) ...........................................................................18

*Sokolow v. Palestine Liberation Org.*,
  2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012)....................................................2, 18

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008)....................................................................................5

*United States v. Bryan*,
  339 U.S. 323 (1950)...............................................................................................22

*United States v. Mount Sinai Hosp.*,
  185 F. Supp. 3d 383 (S.D.N.Y. 2016)...................................................................11

*United States v. Nixon*,
  418 U.S. 683 (1974)...............................................................................................22

*von Bulow ex rel. Auersperg v. von Bulow*,
  811 F.2d 136 (2d Cir. 1987)............................................................................ *passim*

*Waterloo/Cedar Falls Courier v. Hawkeye Cmty. Coll.*,
  646 N.W.2d 97 (Iowa 2002) ...................................................................................6

## STATUTES, RULES AND REGULATIONS

New York Civil Rights Law
  §79-h(a)(6) ..............................................................................................................9

4869-8933-0529.v1

**Page**

Federal Rule of Civil Procedure
    Rule 45 ....................................................................................................................3, 21

Federal Rule of Evidence
    Rule 104(a).................................................................................................................6

Local Civil Rule
    Rule 5.1 ...................................................................................................................14

4869-8933-0529.v1

## I.    INTRODUCTION

As set forth in the Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Bloomberg L.P. to Produce Documents Responsive to Plaintiff's Subpoena (ECF 8) ("Motion" or "Mtn."), plaintiff Aberdeen City Counsel as Administrating Authority for the North East Scotland Pension Fund ("Plaintiff") seeks discovery from Bloomberg L.P. ("Bloomberg") because Bloomberg is in possession of probative evidence of a key issue in Plaintiff's underlying securities fraud case (the "Underlying Action") against Under Armour, Inc. ("Under Armour" or the "Company") and Kevin A. Plank ("Plank"). Indeed, Bloomberg's evidence is related to one of the most important events in the Underlying Action: ██████████████████████████████████ ████████████████████████████████ an analyst report published by Morgan Stanley on January 10, 2016 (the "Morgan Stanley report"), that partially revealed the relevant truth about the Company's financial condition. ████████████████████████████████████████ ████████████████████████████████" Declaration of Michael G. Capeci in Support of Plaintiff's Motion to Compel Bloomberg L.P. to Produce Documents Responsive to Plaintiff's Subpoena (ECFs 3, 9) ("Capeci Decl."), Ex. 6.

Bloomberg's refusal to produce this evidence is based on a claim of journalists' privilege. As is evident from Defendant Bloomberg L.P.'s Memorandum of Law in Opposition to Plaintiff's Motion to Compel (ECF 32) ("Opposition" or "Opp."), however, Bloomberg fundamentally misunderstands the operation of the privilege – it suggests Plaintiff would need to demonstrate the partiality of completely unrelated journalists, and attempts to advance an "editorial privilege" theory that has been consistently rejected by courts in this District. *See Guzman v. News Corp.*, 877 F. Supp. 2d 74, 76-77 (S.D.N.Y. 2012), *aff'd*, 2012 WL 13042629 (S.D.N.Y. Nov. 5, 2012); *In re*

*Search Warrant Executed on Nov. 5, 2021*, 2023 WL 3005726, at *8 (S.D.N.Y. Mar. 21, 2023) (Report and Recommendation of Special Master, the Honorable Barbara S. Jones).

Bloomberg's only possible privilege claim is based on a theory that former Bloomberg employee Stephanie Ruhle Hubbard's ("Ruhle") emails with Plank and other Under Armour executives were part of a journalistic investigation that Ruhle conducted on Bloomberg's behalf. But, as Plaintiff amply demonstrated in its Motion, Ruhle's relationship with Plank was not that of an independent reporter and a source, and Ruhle's emails with and about Under Armour reflect her efforts to advance the interests of the Company, not to conduct an independent journalistic investigation. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 306-07 (2d Cir. 2011). Indeed, ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████  *See* Capeci Decl., Ex. 9 at 27:15-25, 79:17-82:4, 84:5-88:14.

Additionally, even if Ruhle's lack of independence does not destroy Bloomberg's claim of privilege, it makes the privilege "weaker and more easily overcome." *Chevron*, 629 F.3d at 309. And Plaintiff does not seek to compel Ruhle to disclose a confidential source, so already "the standard for relevance to overcome the journalist privilege . . . is low." *Sokolow v. Palestine Liberation Org.*, 2012 WL 3871380, at *3 (S.D.N.Y. Sept. 6, 2012). Plaintiff need only show that "the materials at issue are of ***likely relevance*** to a significant issue in the [Underlying Action], and are not ***reasonably*** obtainable from other available sources." *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 36 (2d Cir. 1999).[1] Because the evidence Plaintiff seeks from Bloomberg is central to its

---

[1]      All emphasis is added and internal citations are omitted unless otherwise stated.

case, and because Plaintiff has already tried to obtain this evidence from myriad other sources –
including defendants in the Underlying Action, ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████ – Plaintiff clearly meets the *Gonzales* standard. *See*
Declaration of T. Alex B. Folkerth in Support of Reply in Support of Plaintiff's Motion to Compel
Bloomberg L.P. to Produce Documents Responsive to Plaintiff's Subpoena ("Folkerth Decl."), filed
concurrently herewith, ¶¶2-4. Finally, Bloomberg has abandoned its claim that the subpoena
subjects it to an undue burden under Federal Rule of Civil Procedure 45. Thus, the Court should
compel Bloomberg to comply with Plaintiff's subpoena.

## II.   THE JOURNALISTS' PRIVILEGE DOES NOT APPLY

In *Chevron*, the Second Circuit observed that "all forms of intention to publish or disseminate
information are not on equal footing," because "[a]n undertaking to publish matter in order to
promote the interests of another" does not serve the public interest that gives rise to the privilege.
629 F.3d at 307-08. Accordingly, the court held that "[a] person (or entity) that undertakes to
publish commentary but fails to establish that its research and reporting were done with
independence from the subject of the reporting either has no press privilege at all, or in any event,
possesses a privilege that is weaker and more easily overcome." *Id.* at 309.[2] Although the court
identified two of Judge Kaplan's findings in particular that supported the filmmaker's lack of

---

[2]     The court provided an example contrasting two hypothetical authors to illustrate its holding.
Jones, the author comparable to the filmmaker in *Chevron*, was "hired or commissioned by [a]
public figure to write a book extolling his virtues and rebutting his critics." 629 F.3d at 308. Here,
***Ruhle is just like Jones***: she was commissioned by Under Armour to extoll its virtues and rebut the
critical Morgan Stanley report. *See, e.g.*, Capeci Decl., Ex. 19 at UA_01171466 (Plank to Ruhle:
"[L]et's get you a list [of positive analyst reports] to have them balance that bull shit story poisining
[sic] the public markets!"); *id.*, Ex. 10 at UA_01173730 (Under Armour rewards Ruhle for "being
the only member of media to get UA's back when [Morgan Stanley] came out against us").

- 3 -

independence in that case, it did not announce a two-part test for finding a reporter's lack of independence. Rather, the two findings were an application of the court's broader holding that "[a]n undertaking to publish matter in order to promote the interests of another" is not "exempt . . . from the obligation to produce information relevant to a dispute before a court of law." *Chevron*, 629 F.3d at 308.

Here, Bloomberg has failed to "establish that [Ruhle's] research and reporting were done with independence" from Plank and Under Armour. *Id.* at 309. To the contrary, Plaintiff has established that Ruhle's emails with and regarding Under Armour were part of her extensive efforts to "promote the interests" of Under Armour – including on Bloomberg's network – due to her close, personal, and un-journalistic relationship with Plank. *See* Mtn. at 6-22. Thus, the documents Plaintiff seeks were not "'gathered in a journalistic investigation'" and the privilege does not apply. *Search Warrant*, 2023 WL 3005726, at *6 (quoting *Chevron*, 629 F.3d at 306).

A.    **This Would Not Be the First Time a Court in This District Has Applied *Chevron* in Denying Application of the Journalists' Privilege**

Bloomberg suggests that no court subsequent to the *Chevron* decision has "f[ound] that the *Chevron* exception applies." Opp. at 3. This is inaccurate. In fact, on March 21, 2023 – after Plaintiff filed its Motion but before Bloomberg filed its Opposition – another court in this District applied *Chevron* to deny a group of journalists' improper invocation of the journalists' privilege over certain documents. *See Search Warrant*, 2023 WL 3005726, at *8-*9 (the deadline for the parties to object to this Report and Recommendation was May 2, 2023 (*see* Endorsed Letter, *In re Search Warrant Dated Nov. 3, 2021*, No. 1:21-mc-00819 (S.D.N.Y. Mar. 28, 2023), ECF 49) and no objections were filed). Although the court held that the journalists could properly invoke the

4869-8933-0529.v1

privilege over some documents,[3] the court held that several other categories of documents were not "'information gathered in a journalistic investigation'" pursuant to *Chevron*, and thus "[t]hese documents [we]re not subject to the qualified journalist's privilege." *Id.* at *9 (quoting *Chevron*, 629 F.3d at 306).

Similarly, here Plaintiff need only show that Ruhle was not engaged in a journalistic investigation with respect to the documents it seeks – Ruhle's communications with and regarding Under Armour and Plank – which ***Bloomberg essentially admits***. *See* Opp. at 22 (arguing Plaintiff's evidence demonstrates that Ruhle's activities were "***personal***," "would not have been within the scope of [Ruhle's] work for Bloomberg, [and] would not have been known to Bloomberg") (emphasis in original). Ruhle's "intimate relationship" with Plank (*see* Capeci Decl., Ex. 4), ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████.[4] *See Search Warrant*, 2023 WL 3005726, at *9; *von Bulow ex rel. Auersperg v. von*

---

[3]     For those documents over which the entity could properly invoke the privilege, the Court held that the privilege was nevertheless overcome pursuant to *Gonzales*. *Search Warrant*, 2023 WL 3005726, at *8 (citing *Gonzales*, 194 F.3d at 36).

[4]     Bloomberg oddly appears to fault Plaintiff for not redacting the publicly available *Wall Street Journal* article that described Ruhle as Plank's "unusual adviser." Opp. at 25 n.19; *cf. Alexander v. Azar*, 396 F. Supp. 3d 242, 254 (D. Conn. 2019) ("I will not order these documents sealed when the information that purportedly requires sealing is so easily accessible elsewhere."). More significantly, Bloomberg incorrectly asserts that Plaintiff "inappropriate[ly]" relies on the *Wall Street Journal* article, that the Court, therefore, may not take "judicial notice" of it, and (puzzlingly) that ███████████████████████████ (and apparently not, *e.g.*, ███████████████████) is the "only probative evidence of the nature of their relationship, and it is the only evidence that Plaintiff should have put before this Court and in its public files." Opp. at 25 n.19 (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts ***adjudicating a motion to dismiss*** may not take judicial notice of news articles to the extent they are offered for the truth of the matters asserted therein)). Because the issue here – whether Bloomberg's "privilege exists" – is a

- 5 -

*Bulow*, 811 F.2d 136, 139 (2d Cir. 1987) (denying claim of journalists' privilege by "intimate friend" of subject of the purported reporting).

### B.    This Is About Ruhle, Not Bloomberg; Plaintiff Need Not Show that *Chevron* Applies to Bloomberg's Unrelated Activities

Bloomberg attempts to reframe the issue presented by Plaintiff's Motion, incorrectly arguing that Plaintiff must show Bloomberg as a whole lacked journalistic independence from Under Armour and Plank.  Opp. at 20-22.  This is a red herring.  As a matter of logic, it makes no sense that Plaintiff would have to show that Bloomberg's unrelated activities demonstrate a lack of journalistic independence when Plaintiff seeks only Ruhle's documents.  *See* Capeci Decl., Ex. 1.  Rather, the Second Circuit has made clear that the appropriate inquiry is whether the information sought was gathered in the course of a specific journalistic investigation.  *See Chevron*, 629 F.3d at 307 ("[I]n collecting **the information in question**, the person must have acted in the role we identified in *Baker*, *von Bulow*, and *Gonzales* . . . .");  *accord* Opp. at 28 n.20 ("As explained in *Guiffre*, the inquiry in *von Bulow* concerned the nature of the relationship between the **journalist and the source** . . . .") (citing *Guiffre v. Maxwell*, 221 F. Supp. 3d 472, 478-79 (S.D.N.Y. 2016)).[5]  Thus,

---

"preliminary question," however, "the [C]ourt is not bound by evidence rules, except those on privilege."  Fed. R. Evid. 104(a).

[5]    *New Eng. Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*, 2014 WL 1567297, at *3-*6 (S.D.N.Y. Apr. 17, 2014), does not support Bloomberg's attempt to reframe the issue.  *See* Opp. at 20.  The question is not whether the privilege applies to news organizations in general (Plaintiff does not dispute that it can), but whether a news organization's **unrelated** newsgathering is relevant to the *Chevron* analysis.  Plaintiff in *New Eng. Teamsters* did not even contest that the privilege applied pursuant to *Chevron*; the court there simply held that the plaintiff had not yet met the *Gonzales* standard.  2014 WL 1567297, at *6 (denying plaintiff's motion to compel without prejudice).  Thus, *The New York Times* did not argue, and the court did not hold, that any of the publication's **unrelated** reporting about HCA Holdings, Inc. was relevant to anything.  *Id.* at *1-*6.  Furthermore, as between an entity and an individual journalist engaged in newsgathering on the entity's behalf, the privilege belongs to the individual.  *See, e.g.*, *Waterloo/Cedar Falls Courier v. Hawkeye Cmty. Coll.*, 646 N.W.2d 97, 101-02 (Iowa 2002) ("The editors in this case are entitled to the reporter's privilege as they are journalists. . . .  The editors are employees of the Courier

- 6 -

Bloomberg's argument regarding its independence from Under Armour and Plank "[s]eparate and apart" from Ruhle (Opp. at 22) is irrelevant.

Moreover, contrary to Bloomberg's claim that it can "assert the privilege . . . with respect to its larger editorial processes" (*id.*), courts in this District have rejected the notion that an entity can claim some sort of "editorial privilege." *See Guzman*, 877 F. Supp. 2d at 74 (news organization failed to show that the journalist's privilege is broad enough to include the editorial process); *Search Warrant*, 2023 WL 3005726, at *8. Rather, the privilege applies to **newsgathering**. *See, e.g.*, *von Bulow*, 811 F.2d at 142 (noting "the process of newsgathering is a protected right" and that "qualified right . . . results in the journalists' privilege"). Thus, Bloomberg's only possible basis for claiming privilege over Ruhle's emails is Ruhle's purported newsgathering – there is no other newsgathering at issue.

In an attempt to box Plaintiff into its incorrect framing of the issue, Bloomberg argues that Plaintiff "can't have it both ways" and cannot "impute[]" Ruhle's activities to Bloomberg, because Ruhle's conduct "concerned only her **personal** activities." Opp. at 22 (emphasis in original). Bloomberg cites the doctrine of *respondeat superior* for this contention. *Id.* (citing Restatement (Third) of Agency §2.04; *Prignoli v. City of N.Y.*, 1996 WL 340001, at *5 (S.D.N.Y. June 19, 1996)). This argument falls apart, however, because Plaintiff is not trying to hold Bloomberg "liable" for anything; Bloomberg is the one attempting to avoid its obligation to provide discovery to Plaintiff by claiming privilege. In fact, the argument favors Plaintiff: because Ruhle was engaged in "**personal** activities" that "would not have been known to Bloomberg" – as Bloomberg all but admits (*see id.* (emphasis in original)) – Bloomberg has no basis to claim that Ruhle was engaged in a

---

newspaper. . . . ***The Courier is not the holder of the reporters' privilege, but the privilege is strictly held by the editors*** and is subject to waiver only by their actions.").

privileged journalistic investigation on its behalf.  *See Search Warrant*, 2023 WL 3005726, at *6 ("[N]ot every document in a reporter's possession is material subject to the qualified journalist's privilege.  The information must be 'gathered in a journalistic investigation' for the privilege to apply.") (quoting *Chevron*, 629 F.3d at 306).  Thus, Bloomberg's attempt to distract from the real issue presented by Plaintiff's Motion merely highlights the attenuated nature of its privilege claim.

### C.  *Fowler* and *Giuffre* Concern the New York Shield Law, Not the Federal Privilege at Issue Here, and Support Plaintiff Anyway

Bloomberg relies heavily on two cases in particular, *Fowler v. Vary*, 2022 WL 3211638 (S.D.N.Y. Aug. 9, 2022) (Kaplan, J.), and *Giuffre*, 221 F. Supp. 3d at 478-79, for its contention that case law in this District "conclusively rejects Plaintiff's arguments in favor of applying *Chevron* here."  Opp. at 3-4.  Notably, *Giuffre* does not even mention *Chevron*.  *See generally* 221 F. Supp. 3d at 472-80.[6]  And both cases apply **New York state law**, not the federal privilege at issue here. *Fowler*, 2022 WL 3211638, at *7 ("[B]ecause the protections afforded by the New York statute are in all respects broader than those potentially applicable here through the federal privilege, it is immaterial whether and to what extent the First Amendment exerts independent force in these circumstances."); *Giuffre*, 221 F. Supp. 3d at 475 ("Because this case concerns a state law claim that is in federal court because of diversity of citizenship, evidentiary and discovery privileges are governed by New York law."); *cf. Chevron*, 629 F.3d at 297-311 (no mention of state law).[7]

The New York shield law differs from the federal privilege in pertinent respects.  First, "the relevant protections supplied by the New York reporter's shield are inclusive of and broader than

---

[6]     Bloomberg incorrectly asserts that "in *Giuffre*, . . . [t]he Court rejected the argument that this ongoing relationship fell within the *Chevron* exception."  Opp. at 26 (citing *Giuffre*, 221 F. Supp. 3d at 478-79).

[7]     As Plaintiff previously noted, the federal privilege applies here because the Underlying Action is a "federal question" case.  Mtn. at 17 n.64 (citing *von Bulow*, 811 F.2d at 141).

those supplied by the federal privilege." *Fowler*, 2022 WL 3211638, at *7.  Even more significant, however, is that the shield law ***itself*** supplies the standard for when its protections apply – they apply to any "professional journalist," ***as defined in the statute***. *Fowler*, 2022 WL 3211638, at *7 (citing N.Y. Civ. Rights Law §79-h(a)(6) (McKinney)).  In *Fowler*, Judge Kaplan noted that because "the New York statute and the federal reporter's privilege are motivated by an identical 'paramount public interest,'" it "follows that the matter of [the reporter's] independence from [the source] is material to whether he falls within the New York reporter's shield's ambit." *Id.*  After discussing "serious questions about the reliability of [the] reporting and [the reporter's] independence," Judge Kaplan held that he was "satisfied [the reporter] acted as a 'professional journalist' ***as defined by this particular statute***." *Id.* at *8.[8]  Because the application of the federal reporter's privilege does not turn on the definition of "professional journalist" supplied by the New York statute, *Fowler* and *Giuffre*[9] speak to a different question than is presented here.

Moreover, to the extent *Fowler* and *Giuffre* are persuasive here, they support Plaintiff.  For example – contrary to Bloomberg's contention that in *Fowler*, "the court found that a reporter providing 'public relations strategy' to a source was not evidence showing a lack of independence in

---

[8]    Bloomberg misconstrues this holding, arguing that "the Court was 'satisfied' that Vary 'acted as a "professional journalist"' ***within the meaning of Chevron***."  Opp. at 19 (quoting *Fowler*, 2022 WL 3211638, at *8).

[9]    The analysis in *Giuffre* similarly turned on the shield law's own standard for its application: in *Giuffre*, the proponent of the subpoena argued that the reporter "ceased to be a reporter with respect to the [p]laintiff" such that "the Shield Law does not apply at all."  221 F. Supp. 3d at 478.  The court cited *von Bulow* – which deals with both the federal privilege and the New York shield law – in holding that "the Court should look to the nature of the 'primary relationship between' the respective parties to determine whether it 'ha[s] as its basis the intent to disseminate the information the public garnered from that relationship.'"  *Id.* at 478-79 (quoting *von Bulow*, 811 F.2d at 145) (alteration in original).  Because the "evidence establish[ed] that [the reporter] was a professional journalist" and the primary purpose of the reporter's relationship with the source was to gather information to publish news stories, the court quashed the subpoena.  *Id.* at 479.

the journalistic process" (Opp. at 25 (citing 2022 WL 3211638, at *8)) – Judge Kaplan found ***the***

***opposite***.  *Fowler*, 2022 WL 3211638, at *8 ("***[W]hat calls [the reporter's] independence into***

***question*** is the messages to [the source] and other documents indicating [the reporter's] willingness

to shape the story to [the source's] objectives, to overlook or massage unverified details, or to

***directly advise [the source] on public relations strategy***.").  As in *Fowler*, Plaintiff presents

evidence that Ruhle directly advised Under Armour on public relations strategy.  *See, e.g.*, Capeci

Decl., Ex. 15 at UA_01171446 ("I'd make the rounds with this [positive information] only [because

headline] just crossed [about] morgan stanley going underweight UA.").  Indeed, the entire thrust of

Plaintiff's Motion is that Ruhle "shape[d] the story to [Under Armour's] objectives." *Fowler*, 2022

WL 3211638, at *8; *see, e.g.*, Capeci Decl., Ex. 10 at UA_01173730 (Under Armour rewards Ruhle

for "being the only member of media ***to get UA's back when [Morgan Stanley] came out against***

***us***"); *id.*, Ex. 29 (Ruhle to Plank: "I in fact argued earlier in your defense.").

Additionally, the facts that supported the reporter's independence in *Fowler* – the reporter's

refusal to depart from the editorial process for the source, and the lack of evidence of financial ties

linking the reporter and the source (2022 WL 3211638, at *8) – are absent here.  Rather, Plaintiff

presents evidence that Ruhle ***did*** "s[eek] special treatment" for Plank and that there were troubling

financial ties between the two.  *Id.*; *see, e.g.*, Capeci Decl., Ex. 37 (minutes after Plank emails Ruhle

about "the UA headlines from Bloomberg" she responds, "[y]ou are 100% right – its [sic] a bad

headline . . . I am committed to changing it on my side of the house (tv)"); *id.*, Exs. 4, 9 (███████

███████████████████████████████████████████████████████████████████████████████

███████████).[10]  The facts supporting the reporter's independence in *Giuffre* – the

---

[10]     Bloomberg's argument that because it is a "multibillion dollar company" it could still publish
its reporting "whether or not a couple of flights were provided to Ruhle" (Opp. at 26-27) misses the
point, which is that ████████████████████████████████████████████████████████████████

reporter's testimony that her communications were in a newsgathering capacity and attribution of information to sources in her reporting – are also absent here. *See, e.g.*, Capeci Decl., Ex. 9 at 38:10-14 (█████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████); Declaration of Dori Ann Hanswirth in Opposition to Plaintiff's Motion to Compel (ECF 28) ("Hanswirth Decl."), Ex. B (Ruhle fails to provide a source for her detailed argument undercutting the accuracy of SportScan's retail data).  In fact, unlike the party claiming privilege in *Giuffre*, Bloomberg did not even submit a declaration from Ruhle.

### D.   Bloomberg Fails to Carry Its Burden of Producing Evidence to Establish Entitlement to the Privilege

As the party claiming the privilege, the burden is on Bloomberg to "establish entitlement to the privilege by establishing the independence of [Ruhle's] journalistic process, for example, through evidence of editorial and financial independence." *Chevron*, 629 F.3d at 309; *accord von Bulow*, 811 F.2d at 144 ("'It is axiomatic that the burden is on a party claiming the protection of a



*Id.* at 27.

As the aphorism goes, "there's no such thing as a free lunch."  Richard Lederer, *On Language; Haunted Words*, N.Y. Times (Sept. 3, 1989), https://www.nytimes.com /1989/09/03/magazine/on-language-haunted-words.html.

11

*See* Folkerth Decl., ¶3.

- 11 -

privilege to establish those facts that are the essential elements of the privileged relationship.'") (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)). Bloomberg supplies a declaration from Laura Zelenko, its Senior Executive Editor, attaching Ruhle's professional biography and two articles about Under Armour by other journalists that Bloomberg published on January 11, 2016. *See* Declaration of Laura Zelenko in Opposition to Plaintiff's Motion to Compel (ECF 33) ("Zelenko Decl.").

All Ms. Zelenko's declaration supports, however, are the following **uncontested** propositions: (i) Bloomberg owns and operates Bloomberg News (Opp. at 5); (ii) Ruhle has served on various boards and councils and won awards (*id.* at 7); (iii) Ruhle covered Under Armour for Bloomberg (*id.*); (iv) Ruhle appeared on Bloomberg discussing the Morgan Stanley report on January 11, 2016 (*id.* at 8); and (v) other Bloomberg journalists also published coverage of Under Armour on January 11, 2016 (*id.* at 10). That Ruhle covered Under Armour and appeared on Bloomberg discussing the Morgan Stanley report on January 11, 2016, however, is central to Plaintiff's argument. That Ruhle has won awards hardly distinguishes this case from *Chevron*, in which the party claiming privilege was an "award-winning producer and filmmaker" who actually "received over twenty international awards from film, environmental, and human rights organizations" for the very project over which he unsuccessfully attempted to claim privilege. *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 287, 289 n.26 (S.D.N.Y. 2010) (Kaplan, J.) , *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011). And, as explained above, Bloomberg's assertion that it published articles by other journalists covering Under Armour is part of its attempt to distract from the actual issue presented by Plaintiff's Motion.

In other words, Bloomberg's evidence does not at all bear on the actual issue, *i.e.*, whether Ruhle was acting as an independent journalist in **her** reporting on Under Armour (particularly on

4869-8933-0529.v1

January 11, 2016).  Rather, Bloomberg – who, given the posture of this litigation, is in possession of more evidence regarding Ruhle's communications with Under Armour than Plaintiff – tellingly attempts to rely on Plaintiff's evidence to carry its burden.  In fact, Ms. Zelenko herself opines on Plaintiff's evidence, but even in this self-serving context Ms. Zelenko does not actually declare that Ruhle was performing an independent journalistic investigation rather than helping Under Armour and Plank in their effort to protect the Company's stock price.  She merely declares that certain of Ruhle's actions, taken out of the broader context of Ruhle and Plank's relationship, were "standard." *See* Zelenko Decl., ¶10.

Additionally, given that Ms. Zelenko is a non-percipient witness who has "worked at Bloomberg for 30 years" (*id.*, ¶3), her conclusory declarations are not entitled to any weight.  *See, e.g.*, *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 WL 12601010, at *32-*33 (W.D. La. Jan. 30, 2014).  "As to the efficacy of the procedural choice of [Bloomberg] in attaching the foregoing 'Declaration' to its opposition brief, . . . the 'Declaration' contains, it would appear, self-serving declarations more in the nature of expert testimony . . . content not appropriate for such a declaration."  *Id.* ("The Court is not in need of any 'quasi-expert,' conclusions . . . .").  "Consequently, Ms. [Zelenko's declaration] . . . , with no indication she was even present at many of the times at issue, is of no moment."  *Id.* at *33.

Bloomberg utterly fails to provide evidence that would actually undercut Plaintiff's arguments, such as an "instance[] in which [Ruhle] appears to have refused to depart from the editorial process for [Plank]" (*Fowler*, 2022 WL 3211638, at *8) or any source for Ruhle's incredibly detailed knowledge of the SportScan data underlying the Morgan Stanley report.  Bloomberg's failure to evidence its entitlement to the privilege dooms its Opposition to Plaintiff's Motion.

E.     **Bloomberg's Other Arguments Fail to Establish Ruhle's Independence**

Bloomberg contends that certain facts, mischaracterized and taken out of context, render Plaintiff's evidence "incompatible" with *Chevron*.  Opp. at 23.  First, Bloomberg argues that Plank "████████████████████████████████████████████████████

████████████████████████████"  *Id.* (emphasis in original).  Bloomberg is apparently suggesting that ██████████████████████████████████████████████████████████████

████████████████████████████████████████████.  Capeci Decl., Ex. 3 at 281:5-19, 318:7-18, 319:11-320:5.[12]  And ████████████████████████████████████████████████████████

████████  (Capeci Decl., Ex. 3 at 284:18-285:1) is a far cry from establishing her independence, especially in the face of ███████████████████████████████████████████████.[13]

Second, Bloomberg argues that Ruhle cannot have been solicited by Under Armour because she reached out to Under Armour about the Morgan Stanley report first.  But the evidence shows that Ruhle was commissioned by Under Armour to tell its story in response to the Morgan Stanley report – she made a detailed argument undermining the Morgan Stanley report on air (Hanswirth Decl., Ex. B), using the same information Plank sent her later that day with a request to let him know if she saw "anything missing" (Capeci Decl., Ex. 17), and was then rewarded by Under Armour for

---

[12]     Bloomberg faults Plaintiff for not providing the full transcripts of the Ruhle or Plank depositions.  *See* Opp. at 13 n.14.  But Plaintiff did not file the full transcripts because Local Civil Rule 5.1 prohibits Plaintiff from doing so.  Should the Court wish to view the full transcripts, Plaintiff is happy to provide them.

[13]     Bloomberg's assertion that the Stephen Curry interview Under Armour rewarded Ruhle with is arguably "more newsgathering" (Opp. at 26) misses the point, which is that Under Armour explicitly arranged for the interview to "thank" Ruhle for her efforts on Under Armour's behalf.  *See* Capeci Decl., Ex. 10 at UA_01173730.  Bloomberg ignores that Plank **stated** the interview was arranged because Ruhle had "UA's back when [Morgan Stanley] came out against" it (*id.*), and suggests no other inference than that Plank was referring to Ruhle's January 11 appearance on Bloomberg.

- 14 -

"being the only member of media to get UA's back when [Morgan Stanley] came out against us" (*id.*, Ex. 10 at UA_01173730). That Ruhle reached out to Under Armour about Morgan Stanley first does not undermine all this; instead, it shows that Ruhle often provided public relations advice to Under Armour, which further "calls [her] independence into question." *Fowler*, 2022 WL 3211638, at *8.

Bloomberg asserts that certain of Ruhle's statements in the January 11 appearance on Bloomberg, in which all of her points echoed an internal Under Armour document designed to undermine the Morgan Stanley report, show that Ruhle did not present Under Armour's point of view "'regardless of what her investigations may reveal.'" Opp. at 24 (quoting *Chevron*, 629 F.3d at 308). But Bloomberg does not provide any explanation for what Ruhle's investigations regarding the Morgan Stanley report may have been, or how Ruhle's statements that it identifies are at all inconsistent with Under Armour's story.[14]

Next, Bloomberg argues that there is no indication that Plank or Under Armour demanded that Ruhle's reporting be changed to suit their objectives, such that Ruhle did not cede "editorial control." Opp. at 24-25. But the fact that Plank and Under Armour did not ask Ruhle to change her reporting on January 11 makes perfect sense because Ruhle's intra-day on-air comments were consistent with Under Armour's talking points – *i.e.*, the evidence suggests that Ruhle was already reporting exactly what Plank and Under Armour wanted her to. And Bloomberg's argument that Plank didn't "insist" that Ruhle make changes to her reporting (*id.* at 25) hardly undermines Plaintiff's evidence that Ruhle did so, even before January 11. Plank did not have to insist; he asked

---

[14]    Indeed, Ruhle's statement that the drop in the stock price was "'not a small number'" (Opp. at 24 (quoting Hanswirth Decl., Ex. B)), ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████" Capeci Decl., Ex. 7 at UA_00280474.

to "discuss" and Ruhle almost immediately told him she was "commited [sic] to changing" the "bad headline" about Under Armour on Bloomberg that he identified.  Capeci Decl., Ex. 37.

Bloomberg also argues that some of Plaintiff's evidence, ██████████████████████ ████████████████, has "nothing to do with *Chevron* at all."  Opp. at 27.  Bloomberg again misses the point. ██████████████████████████████████████████████████████ ████████████████████████████████████████  *See* Capeci Decl., Ex. 3 at 281:2-4 (██████████████████████████████████████████████████); *id.*, Ex. 9 at 38:12-14 (██████████████████████████████████████████████ ██████████████████); *cf. Giuffre*, 221 F. Supp. 3d at 478-79 (courts should determine whether the nature of the "primary relationship" between the putative journalist and source supports the application of the privilege).

Contrary to Bloomberg's suggestion, Plaintiff never argues that the journalists' privilege cannot attach to unpublished information, and Bloomberg attacks a straw man.  *See* Opp. at 27 (citing *von Bulow*, 811 F.2d at 142; *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 110 (2d Cir. 2012)).  Plaintiff's point in citing *von Bulow* is that Ruhle lacked the requisite intent to publish much of the information Plank shared with her.  Mtn. at 21 (citing *von Bulow*, 811 F.2d at 144).  Rather, ██████████████████████████████████████████████████████████████. *Id.* at 16-17.  In other words, Ruhle failed to publish much of the information she gathered from Plank not because it was "off the record," but because she didn't gather the information as part of a journalistic investigation.  Furthermore, the mere fact that ████████████████████████████████████ ████████████████ is not "all [that] *von Bulow* requires."  Opp. at 28 n.20 (citing Capeci Decl., Ex. 9 at 27:6-25).  "Subsequent decisions have concluded that 'the relevant time frame is not when any fact gathering for the subject of the subpoena began, but when the information sought by the

- 16 -

subpoena at issue was gathered.'" *Giuffre*, 221 F. Supp. 3d at 479 (quoting *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 467 (S.D.N.Y. 2013)).

Similarly,



Ruhle's relationship with Plank was primarily that of a friend and advisor (who could also usefully serve as a mouthpiece), not an independent journalist.[15]

*See* Mtn. at 13-17. As Plaintiff explained in its Motion,

(*id.* at 17)

– which makes clear that Plank wielded improper control over Ruhle's reporting about Under Armour.

## III. EVEN IF THE PRIVILEGE APPLIES, PLAINTIFF'S NEED FOR BLOOMBERG'S EVIDENCE OVERCOMES BLOOMBERG'S ASSERTION OF PRIVILEGE

The Second Circuit does recognize the application of the journalists' privilege to non-confidential materials, but because such materials do not implicate "protection of confidentiality" the "privilege is narrower" and "more easily overcome" and the showing for overcoming it is correspondingly "less demanding." *Gonzales*, 194 F.3d at 35-36. Accordingly, courts in this District regularly find the *Gonzales* standard met. *See, e.g., Chevron*, 709 F. Supp. 2d at 295-98;

---

15 

*Sokolow*, 2012 WL 3871380, at \*3; *Schiller v. City of N.Y.*, 245 F.R.D. 112, 118-20 (S.D.N.Y. 2007); *Mandal v. City of N.Y.*, 2004 WL 2375817, at \*3-\*7 (S.D.N.Y. Oct. 21, 2004).

The standard's first prong requires the subpoenaing party to demonstrate that "the materials at issue are of likely relevance to a significant issue." *Gonzales*, 194 F.3d at 36. Again, this is not a high bar. *See Sokolow*, 2012 3871380, at \*3 (this prong was met even though the Court was "skeptical" that the materials would contain a "smoking gun"). Here, Plaintiff seeks Ruhle's emails with and regarding Under Armour because they are probative evidence of an integral part of Under Armour's alleged fraudulent scheme – Under Armour and Plank's efforts to continue concealing their scheme after the Morgan Stanley report partially revealed the relevant truth. Under Armour and Plank's efforts in furtherance of their alleged fraud are not merely a "significant issue" in the Underlying Action; rather, the extent of the alleged fraud is the whole point of the Underlying Action. Bloomberg even notes that Plaintiff's "central allegation" is that Under Armour and Plank "misrepresent[ed] the level of demand for UA product." Opp. at 12. As Plaintiff learned in discovery, this included enlisting Ruhle "***to get UA's back when [Morgan Stanley] came out against us***" ███████████████████████████████████████████████

*See* Mtn. at 2, 6, 12-13. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. *See* Capeci Decl., Ex. 20.

Additionally, the evidence Plaintiff seeks goes to Plank and Under Armour's scienter, because their use of Ruhle (and other financial media) to push back on the Morgan Stanley report demonstrates their intent. Again, characterizing this as a "significant issue" in the Underlying

- 18 -

Action is an understatement – as Bloomberg highlights, the issue of scienter has **already** been dispositive. *See* Opp. at 11-12 (noting the Underlying Action was dismissed until Plaintiff pleaded additional facts regarding scienter). Ruhle's emails that were not sent by Plank or other Under Armour executives are at least "likely relevant" to scienter because, for example, they will shed light on how Ruhle obtained the information pushing back on the Morgan Stanley report – presumably she told **someone** at Bloomberg her source for the highly detailed information about SportScan that she reported.[16]

The *Gonzales* standard's second prong requires a showing that the materials at issue are "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36. Contrary to Bloomberg's suggestion that Plaintiff was dilatory in seeking discovery from Bloomberg (Opp. at 2), Plaintiff subpoenaed Bloomberg towards the end of the discovery period because it was diligently pursuing discovery from other sources regarding Plank and Under Armour's scienter and the full extent of their alleged fraud. Folkerth Decl., ¶¶2-4. Plaintiff exhausted discovery from defendants in the Underlying Action[17] and subpoenaed Ruhle herself – who represented that she had no responsive documents in her possession – before issuing its subpoena to Bloomberg. *Id.*, ¶¶2-3.[18]

---

[16]     This case is very different from the authorities Bloomberg cites for its argument that Plaintiff fails to meet the *Gonzales* standard. *See* Opp. at 31 (citing *McCray*, 991 F. Supp. 2d at 469-70; *Giuffre*, 221 F. Supp. 3d at 477). The court in *McCray* faulted the subpoenaing party for making only "general claims that the outtakes [were] likely to contain relevant material," including for impeachment. 991 F. Supp. 2d at 470. Here, Plaintiff has satisfied its burden by describing the particular issues in the Underlying Action to which the evidence is likely relevant. And Bloomberg has not "provide[d] any information whatsoever as to the content" of the emails; Plaintiff "cannot reasonably be expected to identify with particularity the [emails] that [it] seek[s] where knowledge of their contents lies exclusively with [Bloomberg]." *Chevron*, 709 F. Supp. 2d at 297. As for *Giuffre*, that case did not apply the *Gonzales* standard at all because it deals with the New York shield law, not the federal privilege at issue here. *Giuffre*, 221 F. Supp. 3d at 478.

[17]     Indeed, Under Armour and Plank have produced 307,349 documents (1,325,300 pages) in the Underlying Action, none of which answer the question of where Ruhle obtained the information about SportScan data used in the Morgan Stanley report. Folkerth Decl., ¶2. This suggests that

- 19 -



, demonstrating both the significance of this discovery to Plaintiff's case and Plaintiff's efforts to obtain the evidence it seeks from other sources.

. Capeci Decl., Ex. 17; *see*

Mtn. at 8-9; *see also Mandal*, 2004 WL 2375817, at *7 ("At his deposition, Kerik testified that he had no recollection of discussions of the May 1, 2001 FINEST message, or the Policy generally. Accordingly, the Plaintiffs have made an adequate showing that the evidence that they seek is not available from other sources.").

Plaintiff has, therefore, easily demonstrated that the discovery it seeks from Bloomberg is "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36.  Plaintiff's need for Bloomberg's evidence thus overcomes Bloomberg's assertion of privilege, and Bloomberg should be compelled to comply with Plaintiff's subpoena even if the journalists' privilege does apply.[19]

---

either Under Armour has not provided complete discovery, the information was communicated in another manner (*e.g.*, by phone), or Ruhle obtained the information from someone else – regardless, Bloomberg is the only available party for this important fact.

[18]

Folkerth Decl., ¶3.

[19]      Bloomberg's primary argument regarding the application of the *Gonzales* standard, asserted throughout its Opposition, is that Plaintiff did not meet and confer in good faith.  Opp. at 4, 13-14, 29, 30.  First, this is simply not true.  *See* Folkerth Decl., ¶¶6-11.  Bloomberg's assertion that Plaintiff's counsel, in telephonic negotiations with three different Bloomberg attorneys over the course of nearly two months (*id.*), "fail[ed] to explain why the requested material was likely relevant" (Opp. at 30) defies credulity.  Bloomberg's accusations are belied by its counsel's suggestion to Plaintiff's counsel that Plaintiff "write to the Court to inform the Judge that the dispute

- 20 -

## IV.    BLOOMBERG HAS ABANDONED ITS UNDUE BURDEN OBJECTION

Bloomberg objected to Plaintiff's subpoena on the basis that it subjected Bloomberg to an undue burden in contravention of Rule 45, and stood on this objection throughout the meet-and-confer process.  *See* Hanswirth Decl., Ex. A, ¶5; Capeci Decl., Ex. 11 at 1.  Bloomberg now completely abandons this objection, choosing instead to rehash its journalists' privilege objection.  *See* Opp. at 32-33.  Indeed, Bloomberg fails to muster a single reason that compliance with the supposedly "overbroad and duplicative" subpoena would unduly burden it in the sense contemplated by Rule 45.  Opp. at 32; *cf. Chevron*, 709 F. Supp. 2d at 293 ("Indeed, the burden of resisting the subpoena[] undoubtedly already has imposed a greater burden on [Bloomberg] than would compliance.").  Thus, Bloomberg concedes that Plaintiff's subpoena does not impose an undue burden on it pursuant to Rule 45.  *See, e.g.*, *Chautauqua Com. Park, LLC v. Main St. Am. Assurance Co.*, 2022 WL 15200905, at *2 (W.D.N.Y. Oct. 27, 2022) ("It is well-established that a commanded party's failure to timely object to a subpoena, or to oppose a motion to compel compliance waives such objections and concedes the merits of the motion.").

Bloomberg's discussion of the potential burdens of allowing discovery to be taken from journalists adds nothing to the analysis because these burdens are ***already incorporated*** into the standards for applying or overcoming the journalists' privilege.  For example, Bloomberg cites *Gonzales* and its progeny for its argument that the privilege is designed to protect the press from special burdens that compliance with subpoenas might exact.  Opp. at 32-33 (citing *New Eng.*

---

exists and ***the parties agree*** that it should be fully briefed on the agreed-upon schedule, ***without the need for a pre-motion conference or a response letter from Bloomberg***."  Folkerth Decl., Ex. G at 1-2; ECF 17.  Presumably, Bloomberg would feel there was some need for a pre-motion conference if it had no idea why the documents Plaintiff sought from it were relevant.  Moreover, even if it were true that Plaintiff failed to meet and confer in good faith (it is not), Bloomberg cites no authority holding that this would result in waiver.  Thus, the argument is non-dispositive at best, and it is unclear what substantive outcome Bloomberg is trying to achieve by making it.

- 21 -

*Teamsters*, 2014 WL 1567297, at *3; *Gonzales*, 194 F.3d at 35).  But the whole point of *Gonzales* is that these potential burdens can be outweighed by the subpoenaing party's showing of need for the discovery – and that "the showing needed to overcome the privilege is less demanding" when, as here, non-confidential materials are sought.  *Gonzales*, 194 F.3d at 36.  Similarly, in *Chevron*, the court noted the same concerns about burdening the press discussed in *Gonzales* but nevertheless affirmed Judge Kaplan's decision ordering the subpoenaed party to produce discovery because the party "failed to persuade the district court that he undertook the task [of his reporting] with independence."  *Chevron*, 629 F.3d at 307, 309.

Thus, for the same reasons articulated above, the Court should reject Bloomberg's contention that its mere status as a press entity relieves it of its duty to comply with Plaintiff's subpoena.

## V.     CONCLUSION

Bloomberg tries to cast Plaintiff as an abusive litigant, intent on rifling through press files for shreds of potential evidence that might be of use.  This could not be further from the truth.  In fact, Bloomberg is the party standing in the way of the proper function of the judicial system, by attempting to cloak Ruhle's efforts as "the only member of media to get UA's back when [Morgan Stanley] came out against" the Company in the robes of the journalists' privilege.  Capeci Decl., Ex. 10.  But "'evidentiary privileges in litigation are not favored.'"  *Guzman*, 877 F. Supp. 2d at 76 (quoting *Herbert v. Lando*, 441 U.S. 153, 174-75 (1979)).  "This is because they contravene a fundamental principle of our jurisprudence that 'the public . . . has a right to every man's evidence.'"  *von Bulow*, 811 F.2d at 141 (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).  "Indeed, 'these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.'"  *Id.* (quoting *United States v. Nixon*,

4869-8933-0529.v1

418 U.S. 683, 710 (1974)).  The Court should not depart from these fundamental principles of justice to shield Ruhle's relevant evidence about Under Armour from discovery.

For the reasons provided above, and in its Motion, Plaintiff respectfully requests that the Court order Bloomberg to comply with Plaintiff's subpoena.

DATED:  May 4, 2023                         Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            MARK SOLOMON
                                            X. JAY ALVAREZ
                                            ROBERT R. HENSSLER JR.
                                            (admitted *pro hac vice*)
                                            MATTHEW I. ALPERT
                                            (admitted *pro hac vice*)
                                            JUAN CARLOS SANCHEZ
                                            CHRISTOPHER R. KINNON
                                            (admitted *pro hac vice*)
                                            T. ALEX B. FOLKERTH
                                            (admitted *pro hac vice*)


                                                    s/ T. Alex B. Folkerth
                                            T. ALEX B. FOLKERTH

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)
                                            marks@rgrdlaw.com
                                            jaya@rgrdlaw.com
                                            bhenssler@rgrdlaw.com
                                            malpert@rgrdlaw.com
                                            jsanchez@rgrdlaw.com
                                            ckinnon@rgrdlaw.com
                                            afolkerth@rgrdlaw.com

4869-8933-0529.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL G. CAPECI (MC-0617/NY)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
mcapeci@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE
STEPHEN R. ASTLEY
ELIZABETH A. SHONSON
ANDREW T. REES
MASON G. ROTH
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
sastley@rgrdlaw.com
eshonson@rgrdlaw.com
arees@rgrdlaw.com
mroth@rgrdlaw.com

Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 5, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ T. Alex B. Folkerth
T. ALEX B. FOLKERTH

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  afolkerth@rgrdlaw.com

**Mailing Information for a Case 1:23-mc-00070-LAK-GWG Aberdeen City Counsel as Administrating Authority for the North East Scotland Pension v. Bloomberg L.P.**

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew I. Alpert**
  MAlpert@rgrdlaw.com,e_file_sd@rgrdlaw.com,MAlpert@ecf.courtdrive.com

- **Michael Gerard Capeci**
  MCapeci@rgrdlaw.com,e_file_ny@rgrdlaw.com,afolkerth@rgrdlaw.com,stephaniec@rgrdlaw.com,kmccormack@rgrdlaw.com,e_file_sd@rgrdlaw.com,MCapeci@ecf

- **Timothy A.B. Folkerth**
  afolkerth@rgrdlaw.com

- **Dori Ann Hanswirth**
  Dori.Hanswirth@arnoldporter.com,edocketscalendaring@arnoldporter.com,dori-hanswirth-2121@ecf.pacerpro.com,maosdny@arnoldporter.com

- **Robert R. Henssler , Jr**
  bhenssler@rgrdlaw.com

- **Theresa M. House**
  Theresa.House@arnoldporter.com,edocketscalendaring@arnoldporter.com,theresa-house-5561@ecf.pacerpro.com

- **Christopher Ryan Kinnon**
  ckinnon@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)