**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABERDEEN CITY COUNCIL AS ) 
ADMINISTRATING AUTHORITY FOR )
THE NORTH EAST SCOTLAND PENSION )
FUND, )
          Plaintiff, ) Misc. Case No. 1:23-mc-00070-LAK-GWG
   vs. )
BLOOMBERG L.P., )
          Defendant. )
)
---
)
(*In re Under Armour Securities Litigation,* )
*Pending in the United States District Court,* )
*District of Maryland*, Civil No. RDB-17-388) )
)

**DEFENDANT BLOOMBERG L.P.'S SUR-REPLY MEMORANDUM OF LAW
IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 1 |
| I. | The *Search Warrant* Case Does Not Apply *Chevron*'s "Lack Of Independence" Exception to a Traditional News Organization and Does Not Otherwise Support Plaintiff's Motion | 1 |
| II. | Plaintiff's Waiver Argument Has No Basis In Law Or Fact | 5 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*von Bulow ex rel. Auersperg v. von Bulow*,
   811 F.2d 136 (2d Cir. 1987)..................................................................................4

*Chevron Corp. v. Berlinger*,
   629 F.3d 297 (2d Cir. 2011)..........................................................................1, 2, 3, 5

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985)..................................................................................7

*Diaz v. Eighth Judicial Dist. Ct. ex rel. County of Clark*,
   993 P.2d 50 (Nev. 2000)..................................................................................9

*Fowler v. Vary*,
   No. 20-CV-9586 (LAK), 2022 WL 3211638, 2022 BL 276402 (S.D.N.Y.
   Aug. 9, 2022) ..................................................................................3

*Giuffre v. Maxwell*,
   221 F. Supp. 3d 472 (S.D.N.Y. 2016)..................................................................................3

*Gonzales v. Nat'l Broad. Co.*,
   194 F.3d 29 (2d Cir. 1999)..................................................................................3

*Lonegan v. Hasty*,
   No. CV-04-2743(NG)(VVP), 2008 WL 41445, 2008 BL 2 (E.D.N.Y. Jan. 1,
   2008) ..................................................................................9, 10

*Los Angeles Mem'l Coliseum Comm. v. Nat'l Football League*,
   89 F.R.D. 489 (C.D. Cal. 1981)..................................................................................9

*Pugh v. Avis Rent A Car Sys., Inc.*,
   No. M8-85, 1997 WL 669876, 1997 BL 422 (S.D.N.Y. Oct. 28, 1997) ..............................9, 10

*In re Application of Chevron Corp.*,
   736 F. Supp. 2d 773 (S.D.N.Y. 2010)..................................................................................7

*In re Richard Roe, Inc.*,
   168 F.3d 69 (2d Cir. 1999)..................................................................................7

*In re Search Warrant Executed on Nov. 5, 2021*,
   No. 21 Misc. 813 (AT), 2023 WL 3005726, 2023 BL 136367 (S.D.N.Y. Mar.
   21, 2023) ..................................................................................*passim*

*State v. Ventura*,
    101 Ohio Misc. 2d 15 (Ohio Com. Pl. 1999) ................................................................... 9

*Waterloo/Cedar Falls Courier v. Hawkeye Cmty. Coll.*,
    646 N.W.2d 97 (Iowa 2002) ............................................................................... 7, 8, 9

**Statutes and Rules**

Fed. R. Civ. P. 30(b)(6) .................................................................................................. 7

# PRELIMINARY STATEMENT

Bloomberg[1] submits this sur-reply memorandum of law in further opposition to Plaintiff's MTC, in order to address Plaintiff's (1) citation of and reliance on a report and recommendation (the "R&R") issued by Special Master (Hon.) Barbara Jones in *In re Search Warrant Executed on Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2023 WL 3005726, at *1, 2023 BL 136367 (S.D.N.Y. Mar. 21, 2023) ("*Search Warrant*"); and (2) argument that Bloomberg's ability to claim the protections of the Reporter's Privilege has been waived through testimony by Stephanie Ruhle, its former employee. Regarding Point 1, Plaintiff's reliance on *Search Warrant* is misplaced because it does not interpret the "lack of independence" exception to the Reporter's Privilege established in *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011), and because the case does not otherwise support Plaintiff's arguments here. Regarding Point 2, Plaintiff did not appropriately raise the waiver argument, the cited testimony discloses no newsgathering information, and the law does not support a finding of waiver under these circumstances in any event.

# ARGUMENT

**I.    THE *SEARCH WARRANT* CASE DOES NOT APPLY *CHEVRON*'S "LACK OF INDEPENDENCE" EXCEPTION TO A TRADITIONAL NEWS ORGANIZATION AND DOES NOT OTHERWISE SUPPORT PLAINTIFF'S MOTION**

Plaintiff's Reply claims that: "Bloomberg suggests that no court subsequent to the *Chevron* decision has 'f[ound] that the *Chevron* exception applies,'" (Reply in Support of MTC, ECF 43 ("Reply") at 4 (quoting Memorandum of Law in Opposition to MTC, ECF 32 ("Opposition") at 3)), and then cites *Search Warrant* for the proposition that a court has indeed applied the *Chevron* exception. The Reply also says that neither party objected to the R&R in that case. Both statements are wrong, and that case is factually and legally distinguishable from this one.

---

[1] Defined terms have the same meanings assigned to them in Bloomberg's Opposition (ECF 32).

1

First, Plaintiff mischaracterizes – and misleadingly excerpts – the argument Bloomberg actually made. In fact, Bloomberg argued that its research indicated that there were no cases (1) applying *Chevron*'s "lack of independence" exception to (2) a traditional news organization. (Opposition 3, 33-34.) Plaintiff's attempt to re-write Bloomberg's argument is unavailing.

Further, *Search Warrant* shows that Bloomberg was correct. *Search Warrant* does not apply the *Chevron* exception to find that the organization failed to qualify for its protection on grounds that it was not independent. In fact, the *Search Warrant* R&R does not apply *Chevron*'s "lack of independence" test at all. To the contrary, footnote 3 of the R&R says expressly that the government (the requesting party in that case) "*does not dispute the Petitioners' entitlement to invoke the journalist's privilege.*" 2023 WL 3005726, at *3 n.3 (emphasis added). Accordingly, whether the organization in that case – the activist group Project Veritas – qualified to invoke the privilege was not at issue, and there was no allegation, much less any analysis or finding, that Project Veritas was not engaging in independent journalism under *Chevron*.

*Search Warrant* also is readily distinguishable. This case is about search warrants executed on the homes of Project Veritas employees who were involved in purchasing a diary that purportedly belonged to President Biden's daughter. The fact that the documents at issue were part of a criminal investigation and listed in search warrants that had been authorized by a judge were key factors in the Special Master's analysis. 2023 WL 3005726, at *5. Relatedly, she found that "the concerns animating the qualified journalist's privilege are not concerns here." *Id*. Instead, "the Government is investigating the conduct of the Petitioners," which meant that "[t]his is not a situation where the Government is deputizing Petitioners to do its investigative work for it; the Government is investigating Petitioners." *Id*. That is precisely the opposite of the situation here, where Plaintiff seeks to use Bloomberg's newsgathering to bolster its arguments in civil litigation.

The *Search Warrant* R&R evaluated the documents on a category-by-category basis (based on document type) and decided that some categories were "information gathered in a journalistic investigation," 2023 WL 3005726, at *3, *9, and that for the categories of documents that were found to be journalistic, the test established in *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999), was met. 2023 WL 3005726, at *7-*8. Indeed, the R&R applied *Gonzales* to the first three categories of documents, namely "Communications with Sources and Communications that Identify Sources," "Internal Project Veritas Documents about the Biden Property and Potential Story," and "External Communications During Investigation of Potential Story." *Id.* The only categories found (or questioned) not to comprise "information gathered in a journalistic investigation" were communications concerning a decision not to publish a story and news coverage about that decision, communications about interactions with law enforcement, communications that post-dated work on the potential story, and miscellaneous administrative documents. *Id.* at *8-*9. In other words, even accepting the line that the R&R drew (which, as noted below, is not mandated by *Chevron*), communications with or about sources and about potential stories, including external communications – i.e., the documents at issue here – are all squarely within the definition of "information gathered in a journalistic investigation,"[2] and

---

[2] Plaintiff relies on *Search Warrant* to contend that it "need only show that Ruhle was not engaged in a journalistic investigation with respect to the documents it seeks," and argues that it has done so because Ruhle's activities were purportedly "personal." (Reply 5.) There are at least two problems with this argument. First, *Search Warrant* offers no authority to suggest that the Reporter's Privilege requires a court to parse a journalist's communications with or about news sources to distinguish whether some are related to a "journalistic investigation" and others to purportedly personal topics. Although *Search Warrant* R&R quotes *Chevron* for the "information gathered in a journalistic investigation" language, 2023 WL 3005726, at *9, *Chevron* does not instruct a court to do anything like this, *Chevron*, 629 F.3d at 300, 306 (discussing the "lack of independence" exception at length, and referencing the "journalistic investigation" wording solely to identify the nature of the privilege at issue). *Fowler* is more instructive here. In that case, the reporter had a friendly relationship with his source for years before the source approached him in 2017 to write an article. The *Fowler* court excluded from protection documents that pre-dated the reporter's decision to write the article (i.e., before there was any "professional relationship" or "prospect of future reporting" at all), but found the privilege fully applied to communications that post-dated that decision. *See Fowler v. Vary*, No. 20-CV-9586 (LAK), 2022 WL 3211638, at *12-*13, 2022 BL 276402 (S.D.N.Y. Aug. 9, 2022); *see also see Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016) (applying this rule to a journalist who discussed "seemingly separate topics" with a source and finding that "frequent, often informal communication with sources, even if not for the immediate purpose

drawing that line was not based on whether there was an alleged "personal" relationship between the journalists and their sources, as Plaintiff suggests (Reply 5).[3]

Furthermore, Plaintiff erroneously states that there was no objection filed to the R&R, but in fact, Project Veritas did timely file objections on May 2, two days before Plaintiff filed its Reply here. (Docket, *In re Search Warrant Executed on Nov. 5, 2021*, No. 21 Mc. 00813 (AT), at ECFs 127 (Objection to Special Master's Report ("Objection")), 128 (Motion for Leave to File Objection Under Seal), 129 (Memorandum of Law in Support of Objection to Special Master's Report), and 130 (Ex-Parte Objection).[4]) In its Objection, Project Veritas notes: "Neither the Government nor the Report disputed that this federal common law privilege applies to Project Veritas and its journalists. *See* [R&R] at 6, n.3." (Docket, *In re Search Warrant Executed on Nov. 5, 2021*, No. 21 Mc. 00813 (AT), at ECF 127 at 25.) It also objects to the R&R's findings that certain documents were not part of a "journalistic investigation." (*Id.* at 23-26.) The government currently has until May 23 to respond to Project Veritas's objections, and has asked for an extension until June 6. (Docket, *In re Search Warrant Executed on Nov. 5, 2021*, No. 21 Mc. 00813 (AT), at ECFs 132, 135.) For all of these reasons, Plaintiff's reliance on *Search Warrant* is misplaced.

---

of gathering information for a specific article, is an integral part of the overall newsgathering process" and the privilege "does not narrowly apply only to the specific exchanges where the source conveys 'news.'"). Second, Plaintiff is wrong to suggest that the documents it seeks – i.e., "Ruhle's communications with and regarding [UA] and Plank" – fail to qualify as "information gathered in a journalistic investigation." (Reply 5.) As discussed, in contrast to the categories of documents found not to be protected in *Search Warrant*, all communications sought here concern Bloomberg and Ruhle's newsgathering about UA, which Bloomberg did in fact report about in the Jan. 11 Appearance and elsewhere.

[3] Plaintiff may argue that it did not rely solely on *Search Warrant* and that it also can rely on *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 139 (2d Cir. 1987) for its argument that application of the Reporter's Privilege can be denied because the witness was an "intimate friend" of the subject of the reporting. (Reply 5-6.) This misreads *von Bulow*. The court there decided the privilege issue based on the fact that the witness had never published any news articles or other reporting, and had decided to write a book (for which she was never under contract) only years after the timeframe of the documents she claimed were privileged. Thus, the dispositive issue was not that the witness was a "friend," but that she was not a journalist at all. *Id*. at 139, 142-46. Our facts are entirely different.

[4] Plaintiff may have overlooked this because there are three dockets associated with the R&R (No. 21 Misc. 813 (AT), No. 21 Misc. 819 (AT), No. 21 Misc. 825 (AT)), and the objection is docketed only in Misc. 813 but applies to all.

4

## II. PLAINTIFF'S WAIVER ARGUMENT HAS NO BASIS IN LAW OR FACT

Plaintiff "does not dispute" that (barring application of the limited *Chevron* exception) Bloomberg is entitled to claim the protections of the Reporter's Privilege because it is a news organization. (Reply 6 n.5.) Yet Plaintiff newly contends that Bloomberg's ability to claim privilege has been waived. (*Id.* at 11 n.11.) As Bloomberg established in its Opposition, it is improper for Plaintiff to raise new arguments in a reply brief. (Opposition 22 n.18.)

Even if this issue were properly before the Court, Plaintiff's arguments are without merit for several reasons. First, the cited testimony does not say what Plaintiff claims it does, and in particular, the testimony did not reveal privileged newsgathering. Plaintiff solely cites Capeci Decl., Ex. 9 at 38:10-14, for the notion that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌."[5] (Reply 11.) The full text of that part of the deposition transcript is as follows:

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

(Capeci Decl., Ex. 9 at 38:10-14.) Contrary to Plaintiff's description of this exchange, Ruhle was not being asked *at all* about her "▌▌▌▌▌▌▌▌▌▌▌▌." She was being asked about an instance in which she ▌▌▌▌▌▌▌▌▌▌▌▌▌▌ which she testified was "▌▌▌▌▌." (*Id.* at 38:15-19.) Further, Ruhle's deposition repeatedly confirms that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (*Id.* at 27:6-7 (▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌), 27:15-18 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ 27:22-25 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

---

[5] Footnote 11 is the location where Plaintiff argues that "▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌."

At another point in its Reply, Plaintiff also argues that █████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████" (Reply 2.) But testimony about ██████████████████████████████████████

████████████████████████████████ (*id.* (citing Capeci Decl., Ex. 9 at 27:15-25)) – is not a waiver of her privilege; rather, that is one of the factual predicates for asserting it. And the other portions of the transcript Plaintiff cites do not match up with its description of them. (*Id.* (citing Capeci Decl., Ex. 9 at 79:17-82:4 ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████ 84:5-88:14 ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████.) Ruhle did not disclose ██████████████████████

███████████████████████████████████████████████████████████████, as Plaintiff claims – she merely stated that ███████████████████████████████████████████

█████████████████████████████████ and that ████████████████████████████████

████████████████████████████████████. In short, she did not disclose anything about ███████████████████████████████████ because █████████████████████████.[6]

---

[6] Plaintiff's use of this testimony is unavailing for additional reasons. First, Plaintiff did not dispute Bloomberg's statement that Plaintiff "only included the portions [of the Ruhle transcript] most favorable to its argument. (*Compare* Opposition 14 n.14 *with* Reply 14 n.12.) It follows that the reason Plaintiff felt compelled to overstate the content of the cited testimony to buttress its Reply is that there was nothing else in the transcript that actually supported its

Second, Plaintiff's cases do not provide authority for its contention that the cited testimony could be a waiver, especially where the person testifying was not a corporate officer of Bloomberg and did not otherwise have authority to bind the company or contradict its assertion of privilege. (Reply 11 n.11 (citing *Search Warrant*, 2023 WL 3005726, at *7 (failing to decide argument that *party* waived privilege by making statements in court filings; no discussion of waiver by a non-party through testimony of non-party's former employee); *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016) (analyzing express agreement to waive attorney-client privilege, not journalist privilege; no discussion of waiver by a non-party through testimony of former employee); *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 783 (S.D.N.Y. 2010) (does not hold that contours of attorney-client privilege are the same as journalist's privilege)).) Indeed, typically, authority to assert and waive the corporation's privileges "rests with the corporation's management and is normally exercised by its officers and directors." *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985); *In re Richard Roe, Inc.*, 168 F.3d 69, 72 (2d Cir. 1999) ("[S]ince a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so.").

Indeed, once again only in a footnote, Plaintiff relies on an Iowa state case, *Waterloo/Cedar Falls Courier v. Hawkeye Cmty. Coll.*, 646 N.W.2d 97, 101-02 (Iowa 2002), to argue that, "as between an entity and an individual journalist engaged in newsgathering on the entity's behalf, the privilege belongs to the individual." (Reply 6 n.5.) But this case (which is based on Iowa's

---

baseless waiver argument. Second, Plaintiff claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but it does not provide any supporting transcript citations. (Reply 11 n.11.) Instead, it cites the Folkerth Declaration, which does not quote or attach the transcript. This unsupported argument should be ignored. Third, Plaintiff also argues that this testimony shows that it exhausted all reasonably available sources for this information. But Plaintiff has offered no evidence, and it certainly cannot do so now in its forthcoming response to this sur-reply, to show that it fully exhausted other available sources. For example, Plaintiff has not disclosed whether it took a Rule 30(b)(6) deposition of UA encompassing the topics in the Subpoena, it has not confirmed that it deposed or sought documents from all of the UA-associated individuals listed in its Subpoena, and it has not attempted to describe the document requests or search protocols used in its discovery from the defendants.

privilege rather than the Second Circuit's) stands for the opposite of what Plaintiff argues.

In *Waterloo/Cedar Falls Courier*, the news organization (a newspaper) filed suit against a college for alleged violations of the Open Meetings Act, which required certain official proceedings to be open to the public. After the newspaper sued, two of its editors spoke with unidentified persons who had been present at the meetings that were the subject of the lawsuit. The college deposed the two non-party editors to learn the identities of their sources, and when the editors refused to answer, the college moved to compel their testimony and production of their notes. When the court ordered an *in camera* review of the documents, both the newspaper-plaintiff and the non-party editors separately challenged it – the newspaper-plaintiff by filing an application for an interlocutory appeal and the non-party editors by filing a petition for writ of certiorari in the state supreme court. The proceedings were consolidated for appeal. 646 N.W.2d at 99-100.

On appeal, the college argued that the newspaper-plaintiff waived the reporter's privilege both as to the newspaper-plaintiff and as to the non-party editors by filing the lawsuit, which allegedly put the reporting on the meetings at issue in the litigation. *Id.* at 100. The appellate court rejected this argument for several reasons. First, the court observed that *both* the newspaper *and* the editors had the right to assert the privilege. *See id.* at 101. Next, the court held that because "only the holder of the privilege may waive it," the fact that the *newspaper-plaintiff* had filed an open records litigation arguably putting the privileged communications at issue did not result in the non-party *editors* waiving their claim to privilege, because "[t]he editors are not a party to this case." *Id.* "As such," the court concluded, the newspaper-plaintiff "did not waive the [non-party] editors' privilege by filing suit against the College." *Id.* at 101-02. Finally, the court held that the newspaper-plaintiff's actions did not waive its own claim to the privilege, either. *Id.* at 102.

Plaintiff relies on *Waterloo/Cedar Falls Courier* based on a single statement in the opinion:

8

"The Courier is not the holder of the reporters' privilege, but the privilege is strictly held by the editors and is subject to waiver only by their actions." *Id.* But Plaintiff's suggested interpretation of this sentence – that an individual journalist can waive the privilege of a news organization – is wholly contrary to the decision when read in context as a whole. The court was *not* deciding that the editors held the privilege and that therefore the newspaper could not separately assert it, or that the actions of one of them could waive the privilege of the other. To the contrary, it held that when there are two claimants to the privilege – such as a news organization and its editors – the actions of one of those claimants *cannot waive* the others' entitlement to the privilege. *See id.*[7]

Third, Plaintiff is wrong to imply that the Reporter's Privilege can be waived in the same way as the attorney-client privilege (Reply 11 n.11); in fact, the concept of a broad "subject matter" waiver encompassing anything more than the "specific materials disclosed" does not have the same application to the Reporter's Privilege, for the simple reason (among others) that the protections and rationale for the reporter's privilege are not rooted solely in confidentiality. *See, e.g., Lonegan v. Hasty*, No. CV-04-2743(NG)(VVP), 2008 WL 41445, at *5, *5 n.3, 2008 BL 2 (E.D.N.Y. Jan. 1, 2008) (rejecting argument that because reporter had given deposition testimony as to some topics related to her reporting, she had waived the journalist's privilege regarding her reporting in general); *Pugh v. Avis Rent A Car Sys., Inc.*, No. M8-85, 1997 WL 669876, at *5-*6, 1997 BL 422 (S.D.N.Y. Oct. 28, 1997) (rejecting waiver argument based on disclosure to third party; "Defendant's argument that the privilege is waived … rests on the assumption that confidentiality is the exclusive rationale behind the reporter's qualified privilege. As noted above, the qualified

---

[7] In support of its holding, the court cited cases holding that a *news source* could not waive a journalist's entitlement to the privilege, which drives home that *Waterloo/Cedar Falls Courier* holds that when one potential claimant to the privilege arguably has waived it, their actions do not cause others to waive their own entitlement to it. *See* 646 N.W.2d at 102 (citing *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) (CBS holds the journalist's privilege, and privilege waivers by sources do not waive CBS's privilege); *Los Angeles Mem'l Coliseum Comm. v. Nat'l Football League*, 89 F.R.D. 489, 494 (C.D. Cal. 1981) (same); *Diaz v. Eighth Judicial Dist. Ct. ex rel. County of Clark*, 993 P.2d 50, 57 (Nev. 2000) (same); *State v. Ventura*, 101 Ohio Misc. 2d 15, 20 (Ohio Com. Pl. 1999) (similar).

9

privilege also serves to protect the privacy of editorial processes and the press's independence in its selection of material for publication in accordance with the broader public policy of encouraging the free flow of information and avoiding a chill on the press.").[8]  Further, the notion that Bloomberg waived a privilege based on purported partial disclosures by a former employee ignores that, as a non-party to the underlying proceeding, Bloomberg gains no tactical advantage from the alleged disclosure. *Lonegan*, 2008 WL 41445, at *5 ("[A]ny waiver by partial disclosure typically applies only when a party is attempting to gain some tactical advantage by a partial disclosure of privileged communications . . . . As the respondents are not parties here, the defendants are unable plausibly to articulate any tactical advantage the respondents may be seeking to gain here.").

In short, Plaintiff's late-breaking, factually unsupported waiver contention is devoid of merit and should be easily rejected.

## CONCLUSION

For these reasons, Plaintiff's MTC should be denied in full and with prejudice.

| | |
|---|---|
| DATED:  May 23, 2023 | ARNOLD & PORTER KAYE SCHOLER LLP<br>/s/ Dori Ann Hanswirth |

Dori Ann Hanswirth
Theresa M. House
250 West 55th Street
New York, NY 10019-9710
Tel.: (212) 836-8095 / Fax: (212) 836-8689
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com
*Attorneys for Defendant Bloomberg L.P.*

---

[8] *Pugh* does say that "a journalist *might* waive the privilege by disclosing the notes, tapes or videotapes themselves to third parties," 1997 WL 669876, at *5 (emphasis added), but as the *Lonegan* court found, "[g]iven the context in which [this dictum] was made, this statement can only be read to mean that any such waiver would extend only to the specific materials disclosed to third parties, not to any other related information in the possession of the journalist," 2008 WL 41445, at *5 n.3.