UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ABERDEEN CITY COUNCIL AS                    :
ADMINISTRATING AUTHORITY FOR
THE NORTH EAST SCOTLAND                     :
PENSION FUND,
                                            :    OPINION AND ORDER
                Plaintiff,
                                            :    23 Misc. 70 (LAK) (GWG)
    -v.-
                                            :
BLOOMBERG, L.P.,
                                            :
                Defendant.
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Aberdeen City Council ("Aberdeen") filed this action seeking an order compelling defendant Bloomberg, L.P. ("Bloomberg") to produce documents responsive to a subpoena issued in a separate matter filed in the District of Maryland (the "Maryland Action"). See Notice of Motion, filed Mar. 15, 2023 (Docket # 1).  Before the Court are five motions to seal, filed at docket numbers 6, 30, 41, 52, and 58.[1]  Each motion seeks to seal papers relating to the briefing of Aberdeen's motion to compel.  For the reasons that follow, the motions to seal are granted in part and denied in part.

---

1 See Motion to Seal, filed Mar. 16, 2023 (Docket # 6) ("First Mot."); Declaration of Michael Capeci, filed Mar. 16, 2023 (Docket # 7) ("Capeci Decl."); Letter from Samuel Groner, filed Mar. 20, 2023 (Docket # 10) ("First Groner Let."); Reply in Response to Under Armour's Letter, filed Mar. 23, 2023 (Docket # 18) ("UA Reply"); Motion to Seal, filed Apr. 20, 2023 (Docket # 30) ("Second Mot."); Defendant Bloomberg's Motion to Seal, filed Apr. 20, 2023 (Docket # 31) ("First Bloomberg Mem."); Motion to Seal, filed May 4, 2023 (Docket # 41) ("Third Mot."); Letter from Samuel Groner, filed May 8, 2023 (Docket # 48) ("Second Groner Let."); Motion to Seal, filed May 23, 2023 (Docket # 52) ("Fourth Mot."); Defendant Bloomberg's Motion to Seal, filed May 23, 2023 (Docket # 53) ("Second Bloomberg Mem."); Motion to Seal, filed May 30, 2023 (Docket # 58) ("Fifth Mot."); Letter from Samuel Groner, filed June 2, 2023 (Docket # 61) ("Third Groner Let.").

I.      LEGAL STANDARD

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). The stronger First Amendment right of access applies to judicial proceedings and certain judicial documents afforded this status because of "experience and logic" (i.e., historical practice or whether "public access plays a significant positive role in the functioning of the particular process in question") or "the extent to which the judicial documents are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (quotations omitted). The common law presumption applies to all "judicial documents." Lugosch, 435 F.3d at 119. In Lugosch, the Second Circuit instructed courts on how to assess an application to file a document under seal. Id. at 121-24.

First, the Court determines whether the document at issue is a "judicial document." Id. at 119; accord Olson v. Major League Baseball, 29 F.4th 59, 87-88 (2d Cir. 2022). A document is "judicial" when it is "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"); Olson, 29 F.4th at 87. "A document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotation marks omitted).

2

If a court determines that a document is "judicial" in nature, a presumption of access attaches to the document, and the Court must determine at the second step the "weight" to afford this presumption. Lugosch, 435 F.3d at 119. This determination "flows from the purpose underlying the presumption and the broad variety of documents to be deemed judicial." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"). Courts determine the weight of the presumption of access afforded to judicial documents on a "continuum" of importance. Id. at 1049. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id.; Olson at 87-88. Lugosch expounded on the "continuum" as follows:

> [I]n discussing the continuum along which the strength of the presumption will be measured, we explained that where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches. Amodeo II, 71 F.3d at 1049. Moving down the continuum, away from "matters that directly affect an adjudication" and towards "matters that come within a court's purview solely to insure their irrelevance," we explained that "the weight of the presumption declines." Id. Considering briefly what might fall into the middle of the continuum, we noted that "[o]ne judge has pointed out, for example, that where a district court 'denied the summary judgment motion, essentially postponing a final determination of substantive legal rights,' the public interest in access 'is not as pressing.'" Id. (quoting In re Reporters Comm. for Freedom of the Press, 773 F.2d 1325, 1342 n.3 (D.C. Cir. 1985) (Wright, J., concurring in part and dissenting in part)). At the low end of the continuum, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Id. at 1050.

Lugosch, 435 F.3d at 121.

In Lugosch itself, the documents at issue were submitted by the parties as supporting material in connection with the motion for summary judgment and the presumption was afforded the "highest" weight because the motion was potentially dispositive of the case. Id. at 123; see also Olson, 29 F.4th at 90 (letter filed in connection with motion for reconsideration that "was a

3

dispositive adjudication of the parties' substantive legal rights" accorded "the strongest presumption of access"). By contrast, where the document is submitted in connection with a discovery motion, rather than a dispositive motion, the presumption of access is entitled to only "modest" weight, because the resolution of a discovery motion does not require the Court to "analyze the merits of the parties' claims or defenses." Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., 2016 WL 7188795, at *2 (S.D.N.Y. Dec. 7, 2016). Thus, in Brown, the Second Circuit found at the second step that filings related to "motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony" were not given a strong presumption of public access because judicial powers over discovery and evidence are "ancillary to the court's core role in adjudicating a case." 929 F.3d at 50. The Second Circuit also noted that "while a court must still articulate specific and substantial reasons for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings." Id.

Some of the considerations that go into determining whether a document is a "judicial document" may overlap with the question of weight at the second step. In re New York City Policing During Summer 2020 Demonstrations, 635 F. Supp. 3d 247, 253 (S.D.N.Y. 2022). Thus, courts have recognized that where documents have "little or no discernable relationship to the resolution" of the issue the court is being called upon to decide, such materials will be deserving of "limited weight" even if they are judicial documents. Banco Santander (Brasil), S.A. v. Am. Airlines, Inc., 2020 WL 4926271, at *3 (E.D.N.Y. Aug. 21, 2020); Oliver Wyman, Inc. v. Eielson, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (material that was "largely collateral to the factual and legal issues central to the resolution of these motions" was entitled to only a "low" presumptive weight).

4

At the third step, a court "must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020) (citation omitted). "Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." Lugosch, 435 F.3d at 124. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Lugosch, 435 F.3d at 120 (quoting Amodeo II, 71 F.3d at 1050). Courts must consider whether redactions rather than wholesale sealing will satisfy this balancing. Olson, 29 F.4th at 93.

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997). Additionally, the mere fact that the parties agreed to a confidentiality designation does not overcome the presumption of access to judicial documents. Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (citing cases).

II.     DISCUSSION

The motions to seal are docketed at numbers 6, 30, 41, 52, and 58. We address each next.

A.     Docket # 6

Docket # 6 seeks to seal Aberdeen's memorandum of law in support of its motion to compel, filed at Docket # 8, the accompanying declaration filed at Docket # 9, and 31 exhibits

5

annexed to that declaration.  See First Mot.² Aberdeen has filed redacted versions of these documents at Docket ## 2 and 3.  Aberdeen states that its filings "include[] information that has been designated confidential" under a protective order in the Maryland Action by defendants Under Armour, Inc. ("Under Armour") and Kevin Plank, but takes no position on whether this information should be sealed.  See First Mot. ¶¶ 1-3.

Under Armour, appearing solely to state its position on the sealing motion, concedes that these are "judicial documents," but asserts that, because the instant action concerns only a discovery dispute, "[t]he presumption of public access is particularly weak."  First Groner Let. at 2.  Under Armour contends that the documents "include confidential emails regarding Under Armour business, confidential internal Under Armour documents, and witness testimony regarding those documents. . . . [and] implicate the privacy interests of Under Armour because they contain nonpublic information about Under Armour, including information regarding the company's strategies, its stockholders, its actual and projected financial performance, and its business practices and operations."  Id. at 3.  Further, Under Armour notes that it is a third-party to the instant proceedings and argues that this weighs "heavily" in favor of sealing.  Id.  However, Under Armour undertakes no analysis of the specific documents at issue, and offers no argument as to why any information therein is business information that should be kept under seal.  See id.

---

² Under Armour does not seek to seal the exhibits labeled as Exhibit 8, 10, 12, 14-19, 21-23, 25-27, 29, 31, 33, and 37 to Docket # 9, see First Groner Let. at 1 n.3, and no party advances any reason that these documents should remain under seal.  Under Armour also states that it does not seek redaction of the portion of memoranda that reference the listed exhibits.  Id.  Thus, we consider Aberdeen's motion to apply only to the exhibits at Docket ## 9-1, 9-2, 9-3, 9-5, 9-14, 9-18, 9-22, 9-24, 9-26, 9-28, 9-29, and 9-30.

Because these documents were submitted in support of a discovery motion, we find that the materials constitute judicial documents. See, e.g., In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., 2023 WL 196134, at *12 (S.D.N.Y. Jan. 17, 2023) ("documents submitted to aid the court in the exercise of th[e] authority [to control discovery] are judicial documents to which the common law right attaches").  The presumption of access here is not strong, given that the materials at issue have been filed in connection with a discovery dispute rather than a substantive decision.  See Brown, 929 F.3d at 50.

We now turn to the balancing required at the third step.  First, we note that the discovery motion presents an important issue of journalistic privilege, and thus we view the presumptive weight accorded the public's right of access to be enhanced.  Turning to the countervailing factors, we begin by noting that "the existence of a protective order covering a document is not, in and of itself, sufficient grounds to seal or redact that document."  In re Keurig, 2023 WL 196134, at *5 (collecting cases).  Thus, the fact that the materials have been designated as confidential in the Maryland Action has no bearing on this Court's decision.  We further note that we do not view Under Armour as an "innocent third part[y]" whose interests should "weigh heavily" in the balancing.  Gardner v. Newsday, Inc., 895 F.2d 74, 79-80 (2d Cir. 1990) ("The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."); accord Amodeo II, 71 F.3d at 1050-51; see also Under Seal v. Under Seal, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) ("A party may overcome the presumption of access by demonstrating that sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege.").  This is because the dispute before the Court is in aid of the Maryland Action where Under Armour is itself a defendant.

As to Under Armour's privacy and business interests in keeping the information sealed, Under Armour articulates its interests in the most conclusory terms. See First Groner Let.; Second Groner Let.; Third Groner Let. Certainly, it is not the case that Under Armour's "actual and projected financial performance, and its business practices and operations," First Groner Let. at 3, are trade secrets given that they are being heavily litigated in the Maryland Action and are the subject of an extensive complaint alleging fraud. Under Armour leaves us with little information to judge what its true privacy interests are.

Nonetheless, we have examined the documents at issue and conclude that only the documents filed at Docket ## 9-18, 9-29, and 9-30 reflect possible trade secrets or other important business matters that should be kept private. These documents consist of emails and charts that appear to reflect specific business strategies and internal analyses that have little to do with the merits of the motion before the Court. Docket # 9-28 is a recording that also appears to discuss company strategy and that we find should be sealed.[3] Our willingness to seal these documents is dependent also on the fact that these documents are collateral to the issue presented to the Court in the motion to compel. Accordingly, we find that these documents and the portions of the memoranda of law that specifically reference their content may be sealed. See, e.g., Rubik's Brand Ltd. v. Flambeau, Inc., 2021 WL 1085338, at *2 (S.D.N.Y. Mar. 22, 2021) (finding that "development and marketing strategies," along with "projected sales, net sales, and revenue figures" represented "material that, if disclosed, would competitively harm" the party seeking sealing).

---

[3] Moreover, Docket # 9-28 was submitted only for the fact of its existence, and the contents are not directly relevant to the underlying motion.

By contrast, Under Armour has not shown that the documents filed at Docket ## 9-1, 9-2, 9-3, 9-5, 9-14, 9-22, 9-24, and 9-26 implicate confidentiality interests.  As noted, Under Armour has not undertaken any individualized analysis of these documents and the Court does not find that their contents are so obviously confidential on their face as to warrant sealing.  See In re New York City Policing During Summer 2020 Demonstrations, 635 F. Supp. 3d at 258 (where party seeking sealing gives only general arguments not applicable to a particular document, the party "has not given the Court any reason to counter even the low presumptive weight afforded this document").

For what it is worth, we note that Docket # 9-1 is a 34-page deposition, and Under Armour has not identified which portions, if any, pertain to some confidential business information.  Docket # 9-2 is an email that largely relates to the planning of a meeting, while Docket # 9-3 is an email chain discussing public reporting concerning Under Armour.  Docket # 9-5 is a deposition transcript for a person who is not and has never been an Under Armour employee; thus, any information it reveals has already been shared outside of the company and is obviously not subject to a strong privacy interest.  Docket # 9-14 is an email chain in which a non-employee relates a stockholder's support for Under Armour to the CEO, who in turn responds.  This does not reflect Under Armour's strategy or business operations in such a way as to implicate a privacy interest.  The Court agrees, however, that the stockholder's name and email address should be redacted.

Docket ## 9-22 concerns emails between Under Armour executives and non-employees discussing publicly available articles about Under Armour.  Neither appears to discuss any business strategy or nonpublic information.  Once again, the Court agrees that the names and email addresses of the non-employees should be redacted.

Docket # 9-24 contains an email between Under Armour's then-CEO and a non-employee, which forwards an email relating to a new class of Under Armour stock and seeks feedback on what appears to be a publicly available letter.  The email also discusses whether the recipient, a reporter, should be briefed in light of the information.  We do not find that it implicates the privacy interest articulated by Under Armour.  Again, the names and email addresses of any non-employees should be redacted.

Docket # 9-26 is an excerpt of then-CEO Plank's deposition in which he discusses an email account to which he sent emails relating to Under Armour's business, but does not discuss details of that business.  The remainder of the excerpt discusses a recording of Plank and another Under Armour executive but refers to details of that conversation only broadly.  We do not find that this implicates the privacy concern Under Armour has articulated regarding its strategies, stockholders, performance, practices and operations.  See First Groner Let. at 3.

In sum, the motion to seal is granted in full as to docket ## 9-18, 9-28, 9-29, and 9-30.  The motion to seal is denied as to Docket ## 9-1, 9-2, 9-3, 9-4, 9-14, 9-22, 9-24, and 9-26, except that the names and email addresses of non-Under Armour employees in these documents may be redacted as set forth above.

B.        Docket ## 30 & 41

Docket # 30 seeks to seal Bloomberg's opposition memorandum, filed at Docket # 32, as well as the accompanying declaration filed at Docket # 33.[4]  Bloomberg has filed redacted versions of these documents at Docket ## 29 and 31.  Docket # 41 seeks to seal Aberdeen's reply, filed at Docket # 43, the accompanying declaration filed at Docket # 44, and one exhibit

---

[4] We are aware that Docket # 30 was granted in a text order, (Docket # 56).  Having been convinced that the requisite showing under Lugosch has not been made, however, we have sua sponte reconsidered that Order.

annexed to that declaration as Docket # 44-1.  See Third Mot.  Aberdeen has filed redacted versions of these documents at Docket ## 39 and 40.  Under Armour avers that these documents, with the apparent exception of Docket # 44-1, see Second Groner Let. at 2 n.3, "do not introduce any new confidential material [from] Under Armour, and the proposed redactions . . . relate only to . . . the [c]onfidential [m]aterial identified" in the discussion of Docket # 6 above, id. at 2. Thus, Docket ## 32 and 43 may be redacted only to the extent the Court has permitted redactions as described in section II.A. above.

Docket # 33 contains a Bloomberg employee's analysis of actions taken by a non-employee of Under Armour and does not relate to Under Armour's articulated privacy interest. Thus, Docket # 33 must be publicly filed.  The proposed redactions in Docket # 44 concern only the fact that privilege was claimed in certain instances and do not themselves include privileged information.  As to Docket # 44-1, Under Armour "takes no position" on its sealing, and no other party has advanced an argument as to why this document should be sealed.  See Second Groner Let. at 2 n.3.  Thus, we do not find that Docket # 44 or Docket # 44-1 may be sealed.

    C.    Docket ## 52 & 58

Docket # 52 seeks to seal Bloomberg's sur-reply, filed at Docket # 55.  See Fourth Mot. Bloomberg has filed a redacted version of this document at Docket # 51.  Docket # 58 seeks to seal Aberdeen's sur-sur-reply, filed at Docket # 60.  See Fifth Mot.  Aberdeen has filed a redacted version of this document at Docket # 57.  Under Armour avers that the proposed redactions to those documents address "the same (or substantially similar) non-public [c]onfidential [m]aterial" as the documents we have already ruled on.  Third Groner Let. at 1. Accordingly, we find that Docket ## 55 and 60 may be redacted in accordance with the Court's ruling in section II.A above.

11

Conclusion

For the foregoing reasons, the parties' motions to seal (Docket ## 6, 30, 41, 52, 58) are granted in part and denied in part. Specifically, the motion to seal is granted in full as to docket ## 9-18, 9-28, 9-29, and 9-30. The motion to seal is denied as to all other documents filed under seal except that the names and email addresses of non-Under Armour employees in these documents may be redacted to the extent permitted in section II.A above.

To implement this Order, each party shall file on the public docket all documents that the party heretofore filed under sealed except for (1) those documents whose sealing in full is authorized by this Order (that is, Docket ## 9-18, 9-28, 9-29, and 9-30); and (2) documents whose partial sealing is authorized by this Order (that is, certain documents containing names and email addresses of non-Under Armour employees). As to the latter category of documents, the parties shall file redacted versions of these documents in conformity with this Order.

With respect to the memoranda of law filed in relation to the motion to compel (Docket ## 8, 32, 43, 55, 60), the parties shall publicly re-file these documents with redactions permitted only of language, if any, that reproduces or specifically refers to information that this Order has permitted to be filed under seal.

The parties shall make the filings required by this Order on or before August 23, 2023.

SO ORDERED.

Dated: August 16, 2023
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge